UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MALE TORRVELLAS,  )<br>  )<br>   Movant,  )<br>  )<br>v.  )<br>  )<br>UNITED STATES OF AMERICA,  )<br>  )<br>   Respondent.  )  | No. 3-13-00406<br>Senior Judge Haynes |

# MEMORANDUM

Movant, Male Torrvellas, filed this pro se action under 28 U.S.C. § 2255 seeking to set aside his conviction for armed bank robbery, for which he received a sentence of 96 months. Movant's claim is that he was denied effective assistance of counsel by his first counsel who represented him through Movant's guilty plea and his second counsel who represented him at sentencing. Movant asserts that he was denied effective assistance of counsel by (1) his first counsel's failure to discover exculpatory evidence or file a motion to suppress; (2) his first counsel's failure to advise him properly during plea negotiations, specifically by lying to him and pressuring him to plead guilty, failing to communicate Movant's counteroffer to the Respondent, failing to investigate Movant's competency following the death of Movant's mother weeks before the plea hearing, failing to accurately calculate the sentencing guidelines during plea negotiations, failing to argue for a reduced base offense level, failing to notify the Court of differences between Movant and Movant's counsel, and that counsel was mentally unstable due to illness; (3) his second counsel's ineffectiveness at sentencing and failure to file an appeal following the sentencing hearing; and (4) the Respondent engaged in prosecutorial misconduct by trying to get Movant's first counsel to persuade Movant to confess other robberies during plea negotiations.

On February 2, 2011, a federal grand jury indicted Movant for armed bank robbery in violation of 18 U.S.C. § 2113(a), (d). <u>United States v. Male T. Torvellas</u>, Criminal No. 3:11-cr-00031, Docket Entry No. 6, Indictment. On April 14, 2011, Movant's counsel, William Bruce, filed a motion to continue trial, stating that "Defendant and the United States Government are trying to work out a negotiated settlement and there is a question about his criminal history which makes a significant difference in any negotiated plea." (Criminal No. 3:11-cr-00031, Docket Entry No. 20).

On November 14, 2011, pursuant to the parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C), Defendant pled guilty to armed robbery. <u>Id</u>., Docket Entry Nos. 27, 38. According to the facts in the plea agreement, to which Movant agreed, Movant wore a "Jason-type" hockey mask during the bank robbery, brandished a black pellet pistol and obtained $3,189.00 from the bank tellers. <u>Id</u>., Docket Entry No. 38 at 10-11. Movant fled from the bank in a vehicle, crashed the vehicle on the interstate, fled the crash on foot and was subsequently apprehended hiding in a wooded area near a high school. <u>Id</u>., at 11. After receiving <u>Miranda</u> warnings, Movant admitted that he robbed the Bank of Nashville and told investigators that they could recover the bank robbery proceeds, the "Jason-type" Halloween mask and the gun inside a Dodge Intrepid. <u>Id</u>. Police officers searched the crashed vehicle and found $3,189.00 in cash, a white "Jason-type" Halloween mask, and a black Crossman air pistol. <u>Id</u>., at 11; Docket Entry No. 42 at 17-18.

In their agreement, the parties stated:

> If the defendant is not a career offender, the resulting anticipated offense level of 22, combined with the anticipated Criminal History Category of IV, results in an advisory sentencing range of 63-78 months imprisonment and a fine range of $7,500-$75,000. If the defendant is a career offender, the resulting anticipated offense level of 29, combined with the anticipated Criminal History Category of VI, results in an advisory sentencing range of 151-188 months. Defendant understands

that the court-determined guidelines range may be different from this estimated guidelines range.

Id., Docket Entry No. 38 at 13.

The parties agreed that, "notwithstanding the potential advisory guidelines calculations, given the unique facts and circumstances of this case, that the sentence imposed by the Court shall include a term of imprisonment of 96 months in the custody of the Bureau of Prisons, followed by 3 years of supervised release." Id. According to the plea agreement, Movant agreed to pay restitution to three other banks that he robbed, and in return, Respondent agreed not to seek an indictment against Movant for these additional bank robberies. Id. Movant and his attorney acknowledged that no threats were made to cause Movant to plead guilty. Id. at 16.

At the plea hearing, Movant testified, under oath, that he had read the plea agreement, that there was not any part of the agreement that he did not understand, and that he did not have any questions or any need for the Court to explain the agreement. Id., Docket Entry No. 42 at 14, 20. Movant stated that he was satisfied with his counsel's representation and that counsel had gone over with him the charges, the elements of the offense, the maximum penalty, what the government may be in a position to prove if his case went to trial, and what his investigation into the charges revealed. Id., at 15-16. Movant also testified that he was not pleading guilty because his lawyer was making him do it and that nobody from the government had threatened him, leaned on him, or promised him anything other than what was in the plea agreement. Id., at 16. Movant further testified that he freely made his own decision to plead guilty and did so with the benefit of his lawyer's advice. Id., at 17. Movant then admitted to the statement of facts in the plea agreement as true and accurate and

stated that there was not anything new to add. Id. Movant testified that he did not have any reservations about pleading guilty and that he did not wish to change his mind. Id., at 18.

The Court set the sentencing hearing for April 27, 2012. Id., Docket Entry No. 29. On March 5, 2012, Movant's counsel filed a motion to withdraw, citing medical issues. Id., Docket Entry No. 30. On March 7, 2012, the Court granted this motion, and Movant was appointed new counsel, Benjamin Perry. Id., Docket Entry Nos. 32 and 33.

The presentence report, prepared by the United States Probation Office on March 22, 2012 and revised on April 18, 2012, states, in part:

> **Impact of Plea Agreement**
>
> The plea agreement requires a sentence of 96 months in the custody of the Bureau of Prisons, followed by 3 years of supervised release. It is noted that the guideline range reflected herein is not consistent with the parties plea agreement. Specifically, the parties anticipated the defendant may qualify as a Career Offender. If he did not qualify as a Career Offender, the parties anticipated the defendant would be in Criminal History Category IV; however, the defendant's Criminal History Category is III. It is noted that not all court documents from New York have been received by the probation office. In the event additional documents are received prior to sentencing, the defendant's Criminal History Category and resulting guideline range may be affected. . . .

PSR at ¶ 59.

At sentencing on April 27, 2012, Movant stated that he reviewed the presentence report with his attorney, that he understood the report, that he did not have any questions about the report, and that there was not any part of the document that he felt the need for the Court to explain. (Criminal No. 3:11-cr-00031, Docket Entry No. 43 at 3-4). The Court adopted the presentence report and guideline application without change and determined that Movant's total offense level was twenty-three (23) and his criminal history category was III. Id., Docket Entry No. 40 at 1. Movant's

4

guideline range was fifty-seven (57) to seventy-one (71) months. Pursuant to the plea agreement, the Court sentenced Movant to ninety-six (96) months that was above his guideline range, but noted that "the agreed sentence represents a fair balance between the fact that in addition to this robbery there were at least three others." Id., Docket Entry No. 39 at 2; Docket Entry No. 40 at 3; Docket Entry No. 43 at 7. The Court also sentenced Movant to three (3) years of supervised release and ordered Movant to pay restitution in the amount of $19,752 to the three victim banks. Id., Docket Entry No. 39 at 5. The Court entered its Judgment on May 1, 2012. Id., Docket Entry No. 39. On April 30, 2013, Movant filed this action.

An evidentiary hearing in a Section 2255 proceeding is not required if the record conclusively establishes that a movant is not entitled to relief. Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999); Rule 8, Rules Governing Section 2255 Proceedings for the United States District Courts. Thus, an evidentiary hearing is not required if "the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Arredondo, 178 F.3d at 782 (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Also, where the court considering the § 2255 motion also conducted the plea and sentencing hearings, that court may rely on its recollection of those proceedings. Id. ("Where . . . the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial.").

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court must consider the "answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Such materials may include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written

5

interrogatories propounded by the judge," as well as affidavits. Rule 7(b), Rules Gov'g § 2255 Proceedings. Upon consideration of Movant's amended motion, supporting memorandum and reply, the Respondent's response, and the underlying factual record, the Court finds that there are no evidentiary issues to be resolved and that an evidentiary hearing is not required. The Court will dispose of the motion without a hearing. Rule 8(a), Rules Gov'g § 2255 Proceedings.

For relief under § 2255, a prisoner must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion asserting constitutional error, a movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993)). To prevail on a § 2255 motion asserting non-constitutional error, the movant must show a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Id. (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) citing Hill v. United States, 368 U.S. 424, 428 (1962) (internal quotation marks omitted)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, Missouri v. Frye, --- U.S. ----, 132 S. Ct. 1399, 1404 (2012), and this right applies to "all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (citation omitted). Given his guilty plea, Movant's claims for relief are limited as a matter of law:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. <u>He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in</u> [McMann. v. Richardson, 397 U.S. 759, 770 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (emphasis added).

Since <u>Tollett</u>, the Supreme Court reiterated in <u>United States v. Broce</u>, 488 U.S. 563 (1989), on a defendant's withdrawal of his guilty plea:

> "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S., at 757, 90 S.Ct., at 1473 (citation omitted).
>
> Similarly, we held in <u>McMann v. Richardson</u>, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), that a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." <u>Id.</u>, at 770, 90 S.Ct., at 1448. <u>See also</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("[J]ust as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings") (citation omitted).

<u>Id.</u> at 572.

To establish ineffective assistance of counsel, Movant must demonstrate that his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691.

In Strickland, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . [, as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

To establish that counsel's performance was deficient under Strickland, a movant "must identify acts that were 'outside the wide range of professionally competent assistance.'" Smith v. United States, 348 F.3d 545, 551 (6th Cir. 2003) (quoting Strickland, 466 U.S. at 690). In evaluating whether a movant has received counsel that falls short of what the Sixth Amendment guarantees to a defendant, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (quoting Strickland, 466 U.S. at 690).

In evaluating the prejudice prong, courts must be mindful that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. (citation omitted). Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting Strickland, 466 U.S. at 694).

"[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). Where the ineffective assistance of counsel claim involves a guilty plea, "the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett . . . ." Id. Under the "prejudice" requirement, "the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Thus, "[f]or example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006). Similarly, where counsel is alleged to have failed to advise the defendant of a potential affirmative defense "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003).

Movant asserts that his first counsel, William Bruce, provided ineffective assistance of counsel by failing to discover exculpatory evidence or file a motion to suppress. In his affidavit, Bruce states, "My investigation into the events revealed that Mr. Torrvellas had received proper Miranda warnings before he confessed to the bank robbery, and that he had, in fact, robbed the bank. Although I considered filing a motion to suppress his confession, my investigation revealed no good faith basis for such a motion." (Civil No. 3:13-cv-00406; Docket Entry No. 39, Bruce Affidavit at ¶ 3). The decision not to file a futile motion to suppress does not constitute ineffective assistance. United States v. Hanley, 906 F.2d 1116, 1121 (6th Cir. 1990). Movant does not allege any facts that would warrant his counsel filing a suppression motion. Further, Movant does not identify any allegedly exculpatory evidence that his counsel could have found that would have affected his decision to plead guilty. Therefore, this claim must fail.

Movant asserts that Bruce failed to advise him properly during plea negotiations, specifically by lying to him and pressuring him to plead guilty, failing to communicate Movant's counteroffer to the Respondent, failing to investigate Movant's competency following the death of Movant's mother weeks before the plea hearing, failing to accurately calculate the sentencing guidelines during plea negotiations, failing to argue for a reduced base offense level, failing to notify the Court of differences between Movant and Movant's counsel, and that counsel was mentally unstable due to illness. For the reasons stated below, the Court concludes that these claims lack merit as Movant fails to show that Bruce's performance was deficient or that but for Bruce's alleged errors, Movant would not have pleaded guilty and would have insisted on going to trial.

A plea of guilty is valid if entered voluntarily, knowingly and intelligently, and its validity is determined under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 748-49 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). The Constitution requires that a defendant be informed of the direct consequences of his plea, Brady, 397 U.S. at 755, including the maximum possible sentence. Riggins v. McMackin, 935 F.2d 790, 796 (6th Cir. 1991). In the plea bargaining process, "a defendant must show the outcome of the plea process would have been different with competent advice. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). "[W]here the court has scrupulously followed the required [plea] procedure, 'the defendant is bound by his statements in response to that court's inquiry.'" Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (citations omitted).

In his affidavit Bruce describes the plea negotiations as follows:

> In negotiating a plea agreement, I was concerned because his criminal history indicated he had two separate robbery arrests in New York from 1992 and that he had served significant jail time following those arrests. If both those arrests resulted in

11

convictions, Mr. Torrvellas would qualify as a career offender under the sentencing guidelines, and even with a reduction for acceptance of responsibility, his guideline range would have been 151-188 months. Based on the information provided to me by the government, I believed his guideline range without the career offender enhancement would be 63-78 months.

The government also provided me with evidence that Mr. Torrvellas had robbed three additional banks prior to the bank robbery with which he was charged. The four bank robberies had occurred on every other Friday from September 10 through October 22, 2010. I recall that the government had GPS data showing that cars which were rented or loaned to Mr. Torrvellas for test drives were present at the banks which were robbed on at least two of these occasions, and that the disguise worn in some of those robberies matched the one used in the robbery with which he was charged. The government was prepared to supersede the indictment of Mr. Torrvellas with these additional robberies, and if he did not qualify as a career offender, these robberies would have increased his federal sentencing guideline range to 92-115 months.

I had several communications with the Government regarding Mr. Torrvellas' plea negotiations. The government ultimately offered to accept a plea to the single charge in the indictment, and to agree not to indict Mr. Torrvellas on the other three bank robberies, in exchange for a binding sentence of 96 months and restitution on all four bank robberies. I communicated this offer to Mr. Torrvellas, who accepted the offer after we discussed his case in detail. . . .

Later, prior to the plea, Mr. Torrvellas had second thoughts about accepting the government's plea offer, and asked me to propose a counteroffer to the government of 78 months imprisonment. I communicated this counteroffer to the government on October 15, 2011. The government rejected this counteroffer, and repeated its position that they would supersede the indictment with all four bank robberies if Mr. Torrvellas did not accept the 96 month deal.

I communicated the government's rejection of the counteroffer to Mr. Torrvellas, and he agreed to go forward with the original plea agreement. His decision to do so was entirely his own. I explained the dangers of going to trial and of the possibility that he would be deemed a career offender to him, but I did not in any way coerce him into pleading guilty. I was prepared to take his case to trial if he had rejected the government's offer.

. . . .

In February, 2012, I became ill and I was hospitalized on February 28, 2013. On March 5, 2012, my office filed a motion requesting that I be relieved as counsel for

> Mr. Torrvellas and the Court granted that motion on March 7, 2012. My illness did not affect my representation of Mr. Torrvellas in any way.

(Docket Entry No. 39 at ¶¶ 5-9, 12); see Docket Entry No. 41, AUSA William L. Deneke's Affidavit at ¶¶ 3-8.

The plea agreement reflects the parties' uncertainty as to whether Movant might qualify as a Career Offender and specifically provided the anticipated sentencing ranges, depending if Movant were determined to be a Career Offender or not. Movant testified under oath that he had read the plea agreement, that he understood it, and that he did not have any questions or any need for the Court to explain the agreement. Movant testified that he was satisfied with his counsel's representation and that counsel had gone over with him the charges, the elements of the offense, the maximum penalty, what the government may be in a position to prove if his case went to trial, and what his investigation into the charges revealed. Movant also testified that he was not pleading guilty because his lawyer was making him do it. Movant further testified that he freely made his own decision to plead guilty and did so with the benefit of his lawyer's advice, that he did not have any reservations about pleading guilty, and that he did not wish to change his mind. Moreover, Benjamin Perry, Movant's sentencing counsel, attests that when Movant questioned why he was agreeing to a sentence higher than the advisory guidelines and Perry asked if Movant wanted to attempt to withdraw his plea and proceed to trial with potential new charges, Movant declined to do so. (Docket Entry No. 42, Perry Affidavit at ¶ 3).

Attached as exhibits to his reply, Movant submits correspondence between Bruce and himself and between Bruce and Respondent, reflecting that Bruce did communicate Movant's counteroffer to Respondent. In an October 27, 2011 email sent from Bruce to Respondent, Bruce states that

Movant was not rejecting the eight year offer, but that Movant did not believe that he qualified as a Career Offender and that 78 months was at the top end of the guideline range if he were not a Career Offender. (Docket Entry No. 49-1 at 26). Respondent rejected Movant's counteroffer, stating that Movant could take the risk of an open plea. Id. Bruce communicated Respondent's response to Movant. Id. at 6. Although Movant's agreed upon sentence was ultimately higher than the applicable guideline range, Movant was not charged with the additional robberies and his sentence was within what the parties anticipated his guideline range would have been had he been charged with and convicted of the additional robberies.

As to Movant's competency claim, "[t]he standard for competence to plead guilty is the same standard applied for competence to stand trial, i.e., 'whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" United States v. Brumfield, 208 F.3d 215 (6th Cir. 2000) (quoting Godinez v. Moran, 509 U.S. 389, 396, 398-99 (1993) quoting Dusky v. United States, 362 U.S. 402 (1960) (internal quotation marks omitted)). "The focus of the competency inquiry is whether the defendant has the ability to understand the proceedings." Id. This "competency requirement 'has a modest aim.'" Id. (quoting Godinez, 509 U.S. at 402).

Bruce attests that "[a]lthough Movant was distraught over the recent death of his mother, this event did not, in my opinion, affect his competence to understand the plea agreement in any way." (Docket Entry No. 39 at ¶ 11). Movant does not allege any facts or present any evidence to support his allegation that he was not competent to understand the plea agreement and enter a guilty plea. Movant's exhibits demonstrate that he and Bruce had much discussion concerning his guilty plea.

14

(Docket Entry No. 49-1). Movant clearly answered the Court's questions at the plea hearing and demonstrated that he understood the proceeding. Movant affirmed that he was aware of the charges to which he was pleading guilty and the potential penalties they carried.

Movant asserts that his second counsel, Benjamin Perry, was ineffective in representing him at sentencing and by failing to file an appeal following the sentencing hearing. Movant fails to allege any specific errors allegedly committed by Perry while representing Movant at sentencing. In his affidavit, Perry states:

> On March 6, 2012, I was contacted by the Federal Public Defender's Office about accepting a CJA panel appointment to replace William B. Bruce as counsel for Male Torrvellas. At the time of my appointment, Mr. Torrvellas had a Sentencing Hearing scheduled for April 27, 2012. I agreed to represent Mr. Torrvellas and made my initial contact with him by letter dated March 13, 2012 . Mr. Torrvellas was detained pending sentencing and our communication included meetings at the Warren County Jail, correspondence and telephone calls.
>
> On November 14, 2011, prior to my representation, Mr. Torrvellas entered into a binding Plea Agreement with the government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. In exchange for a sentence of ninety-six (96) months and $19,752 in restitution, the government agreed not to prosecute Mr. Torrvellas for three other bank robberies or to pursue any potential firearms charges.
>
> I met with Mr. Torrvellas on April 5, 2012 at the Warren County Jail and reviewed the Presentence Report ("PSR") with him word for word. Mr. Torrvellas questioned why he was agreeing to a sentence that was higher than the advisory guidelines contained in the PSR. I explained to him at length that the sentenced he had agreed to, while higher than the advisory guidelines contained in the PSR, was in exchange for the government not prosecuting him for three additional armed bank robberies. I explicitly asked Mr. Torrvellas if he wanted to attempt to withdraw his plea and proceed with a trial and potential new charges, and he said that he did not.
>
> I prepared written objections to the PSR, and I filed a sentencing brief requesting that the Court impose the agreed upon sentence.
>
> Mr. Torrvellas was sentenced on April 27, 2012 and the Court imposed the agreed upon sentence. The Court also granted undersigned counsel's request that the U.S.

Marshals consider allowing Mr. Torrvellas a few moments to visit with his infant twins whom he had never held.

. . . .

During my representation of Mr. Torrvellas, he and I communicated well with each other and he always seemed pleased with my representation of him.

Mr. Torrvellas has now asserted that my representation was ineffective in that I: (A) "failed to give notice of appeal at the sentencing hearing as well as advise the Petitioner of his rights concerning the appeal process;" and, (B) "was very ineffective in representing Petitioner during sentencing."

> A. I advised Mr. Torrvellas that his plea agreement effectively waived most of his appellate grounds, and Mr. Torrvellas clearly understood that. Mr. Torrvellas did not timely request that I file a notice of appeal. Mr. Torrvellas never requested that I file a non-frivolous appeal other than an ineffective assistance of counsel claim against William B. Bruce. At that time, I informed Mr. Torrvellas that I no longer represented him in federal court. I also provided him with instruction and pertinent deadlines for an 28 U.S.C. § 2255 claim.
>
> B. Given that Mr. Torrvellas' binding plea agreement had been signed months prior to my representation, I do not see how my representation could have been any more effective during the sentencing process and hearing.

(Docket Entry No. 42 at ¶¶ 1-5, 8-9).

Attached to Perry's affidavit are letters dated July 26, 2012 and September 6, 2012 from Movant, requesting Perry to file an appeal asserting an ineffective assistance of counsel claim against Bruce. (Docket Entry No. 42-2 and 3). In the July 26, 2012 letter, Movant states:

> Now, as far as my federal case I know that I gave up most of my appeal rights when I pleaded guilty but if there is anyway at all possible for you to find any grounds to appeal my case with the federal Appellant Court then it would be greatly appreciated if you could start on that appeal process . . Maybe perhaps on the grounds ineffective assistance of counsel on Mr William Bruce part as well as on part of AUSA Deneke.

(Docket Entry No. 42-2 at 1-2).

The Court entered its Judgment on May 1, 2012. Thus, Movant had until May 15, 2012 to file his appeal. See Fed. R. App. P. 4(b)(1)(A). Thus, Movant's request was untimely.[1] Based upon the record, Movant fails to demonstrate that Perry's performance was deficient or prejudiced Movant.

Lastly, Movant alleges that the Respondent engaged in prosecutorial misconduct by trying to get Bruce to persuade Movant to confess to other robberies during plea negotiations. To establish prosecutorial misconduct, a movant must first prove that "the prosecutor's conduct and remarks were improper." Macias v. Makowski, 291 F.3d 447, 452 (6th Cir. 2002). If the first element is established, the court must then apply the four-factor test " to determine 'whether the impropriety was flagrant' and thus violated the defendant's due process rights." Id. (citation omitted). The four factors are: "'(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.'" Id. (citation omitted).

Movant fails to show that the Respondent engaged in any prosecutorial misconduct. The record reflects that during plea negotiations Respondent offered not to charge Movant with three additional robberies in return for Movant accepting a sentence of 96 months. Thus, Movant was

---

[1] The Court notes that the Sixth Circuit is "generally reticent to address claims of ineffective assistance of counsel on direct appeal," United States v. Carver, 179 F. App'x 276, 279 (6th Cir. 2006), as " a motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel," because it "allows the claim to be litigated in the first instance in the district court, which is 'the forum best suited to developing the facts necessary to determining the adequacy of representation' because it may take testimony from witnesses including the defendant, prosecution, and counsel." United States v. Ferguson, 669 F.3d 756, 762 (6th Cir. 2012) (citation omitted). The Sixth Circuit, however, may elect to hear the issue on direct appeal if it finds that the parties have adequately developed the record. Ferguson, 669 F.3d at 762.

spared the potential of being sentenced as a career offender and Respondent gave up its opportunity to charge him with three additional bank robberies. Respondent also stated that Movant was free to enter an open plea if Movant did not like Respondent's offer. The record also establishes that Movant's guilty pleas were knowing, intelligent and voluntary. Movant fails to show anything improper about Respondent's conduct.

Accordingly, the Court concludes that Movant's amended motion to vacate, set aside, or correct sentence should be denied and this action should be dismissed with prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of August, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge